The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Thank you. Our first case this morning is Johnson v. Veterans Administration. Good morning, Your Honor. I'm Philip Keefe, appearing for a Karen Johnson petition. This is the case for the VA hospital employee who was fired on April 22, 2008. And a month later faxed the hospital director a letter starting with the words, I am appealing the recently received removal from you. The arbitrator found that the first time that Ms. Johnson or the union attempted to appeal her discharge was in a union grievance on August 15. We suggest that as arbitrary and capricious reading of the letter of May 20, because it not only begins with the words, I am appealing the recently received removal from you, but asserts that she did not agree with the reasoning behind the discharge and that she was not treated fairly and equitably. How does it put the agency on notice of a formal Article 42 grievance? It's clear she's appealing and that she is seeking some kind of redress, but how do we get to that Article 42 grievance? Because the contract does not incorporate the common law rules of pleading any more than the federal rules do. If this court received a document that was worded the way that Ms. Johnson's was, if it in fact said, I am appealing the decision of the arbitrator and I request ADR, this court would not ignore it. At absolute worst, it would take it as ambiguous and ask for a clarification. Isn't the ordinary rule in the MSPB setting is that you construe pro se pleadings generously? Absolutely. And that's the same in this setting, right? Absolutely, Your Honor. And so isn't the question whether or not this letter that she sent, does it contain a grievance? That's correct, Your Honor. And don't we have to look at the definition of grievance, both in the statute and the contract? And a grievance is a complaint. It is a complaint. And I do not agree with the reasoning behind the removal. It seems to me to be a complaint. Pardon? It seems to be a complaint. Yes. It is, Your Honor. I think your case is just as simple as that. It's as simple as that. The arbitrator himself uses the words appeal and grievance interchangeably. For example, he says the first time there was a formal appeal of the discharge was the August 15th document. That document doesn't use the word appeal. It uses the word grievance. These words are all interchangeable in any kind of rational labor relations situation. But you have two avenues. Your client had two avenues to go down to, right? Your client could have appealed to the Merit System Protection Board where the word appeal would make some sense and have some bite. Yes. Or it could go into the arbitration canal, if you will. Yes, Your Honor. The word appeal has no meaning in that canal. I'm sorry? The fact she says I'm appealing, I'm asking for help, doesn't mean that she's filing a formal appeal. I mean appeal in a colloquial sense. But I'm appealing to your attention, if you would pay attention to me today. Your Honor, I've done labor relations in federal government for 40 years. I find it unimaginable that either an agency or an arbitrator could find the words I am appealing my discharge as to be something other than I am filing a complaint, an appeal, a grievance. Now the arbitrator, of course, went the other way. Yes. I presume this is a person experienced. I presume that the arbitrator did that because it doesn't mention the word grievance at any point. How would you deal with that? That would be an interesting presumption. The arbitrator didn't say that. The arbitrator simply ignored the words I am appealing. And then he underlines or double underlines the clause that comes after it. Now that's no part of his rationale. I guess the other thing you might want to tell us about is why it took you more than a year to characterize your May letter as a step one grievance. You know, for a long period of time there you seemed to accept this as an informal request, not the formal grievance. What apparently happened was the union was offended by the fact that the agency said we are not going to agree to use alternative dispute resolution under Article 6 of the contract because that's limited to EEO cases, which the union thinks is wrong. And so the union wanted to get that issue settled and it did want to have ADR before it got to the arbitration stage is what my understanding is. And that's what I gather from the record. I will emphasize that this grievance procedure, on the question of timeliness and dealing with time limits and what happens, is extremely detailed and obviously was carefully negotiated. Because what it says is, first it doesn't say what happens if the union or the employee misses a deadline. Although I think most arbitrators find that you forfeit a grievance if you don't meet the deadline if you're on the plaintiff's side. But it does say that if the agency misses a deadline on step two or step three grievance, the employee automatically wins. There's not a question of moving to the next step. Parties agreed to that and then parties agreed that with respect to the agency failing to meet the deadline responding to the first step grievance, the union just has the right to move to the next step. An argument might be made on latches, which wasn't, but there's no such thing as, you know, we miss a deadline. I'm not sure the union covered itself in glory as far as protecting Ms. Johnson's interests, but it didn't forfeit them either. The arbitrator's decision actually appears, when we concentrate on the last two paragraphs of it, as if it's saying that Ms. Johnson loses because the August 15th grievance was filed too late, not in relation to when Ms. Johnson was fired, but in relation to when the agency informed the union it would not participate in ADR. And if that is actually the arbitrator's rationale, it's arbitrary and capricious to the nth degree. The core question for me, as you probably figured out earlier, is what is the nature of this May 20th letter? What kind of a pleading is it? The government maintains in its brief that that issue is a question of fact upon which we would review for substantial evidence. If that's true, then you have a harder case because we would have a fact finding by the arbitrator. What is your take on that? I mean, your response to their citation, the other side's citation to Malone or whatever, was simply to say, well, that case decided in de novo. Why do we know that we have de novo review here? Your Honor, I am embarrassed. In fact, my understanding is this Court decides jurisdictional questions de novo no matter what form it arises in. And I think I was overwhelmed by how arbitrary and capricious and unsupported by evidence the arbitrator's decision was. We failed to adequately brief the fact that this issue is a jurisdictional question and this Court determines jurisdictional questions. Don't we have a contract? We have a cause of action that's being driven by a contract. We have a contract to interpret. Yes, Your Honor. Contractual interpretation is always a question of law. Yes, Your Honor. And it would be a different case if we had a reasoned decision. We don't. We have these conjuries of paragraphs that, in some sense, don't even follow from each other, but to the extent they do, they don't make any sense. I don't know what happened with this arbitrator, but poor Mrs. Johnson, who may be guilty of whatever she's charged with, hasn't received a day in court that she ought to. Can I come back to the Chief Judge's question, which I thought was a good one? Why a year before you're sort of stamping up and down and saying, hey, listen, I've been barred from bringing in a formal grievance? It seemed to me, you can correct me, it seemed to me that for this period of time you're simply trying to get into ADR. Yes. Your interest is not to invoke the formal proceeding that would be costly and time-consuming, yada, yada. So instead you're jockeying, if you will, with the agency about whether or not you can get into ADR. When it finally becomes clear that that isn't going to happen, then you are saying that I have filed a sufficient piece of paper to entitle me to proceed formally. That's mostly the case as far as I know, but also what the record shows is the August 15th grievance, then was filed after the third step grievance, which is allowed, referred to arbitration, and then the union gets an attorney involved. The attorney thought that the August 15th grievance was going to deal with the merits of the case. She finds out from management that they don't look at the grievance. It doesn't have anything to do with the merits of the case. The case is scheduled for arbitration. She says, wait a minute, we're not going to waste our time on this. Let's go back to the original grievance. So the union, three days before the scheduled arbitration, withdrew. A week before that, she sent a letter to management saying, here's the situation. If you agree that what's scheduled for arbitration includes the merits of the discharge, we'll go ahead with the arbitration. Otherwise, we're accepting your word that the August 15th doesn't cover the merits, and we're just simply now moving the May 20th grievance to the second step. And interestingly, the agency response to the second step and third step grievance, I don't believe, challenges the fact that the May 20th document is a grievance. It challenges the timeliness of our moving it. Would you like to save your rebuttal time, Mr. Keith? Yes, thank you. Thank you, Ms. Stern. May it please the Court. The arbitrator in this case had to construe Ms. Johnson's May 20th, 2008 letter in light of the conduct of the parties as reflected in the subsequent letters that they wrote, the wording of those letters, the timing of those letters. He had to go back and take all of that into account and reach the factual determination that that May 20th, 2008 letter was never intended. It was not Ms. Johnson's intention, nor did she consider it to be a grievance. If it's interpretation of a contract term, and the term is clearly interpreted without the need of any external evidence, why would you look at the conduct of the parties? I agree on it to the extent that there's a contract interpretation, it would be a clear question of law. But in this case, the arbitrator had to determine the nature of what that May 20th letter meant. And he determined he looked at the parties' conduct. Ms. Stern, I understand what you're saying. You're saying that if we are construing what this document is as a matter of law, as if it were a pleading, you're trying to decide, well, was it a counterclaim or was it something else? So the courts were trying to decide whether this is a, quote, complaint, i.e., a grievance. I just heard you say that if we're reviewing this as a matter of law, then we simply look to the contract term, what is a grievance, and then decide whether this states a grievance, right? I agree that would be a question of law, but I think to the extent that the arbitrator had to construe the parties' intentions based on their conduct, that part would be a question of facts. I guess, at best, I would say it would be a mixed question of facts. It would be unnecessary. If you had a clear interpretation, it wouldn't turn to a course of conduct. Typically, in contract interpretation, you don't turn to a course of conduct. If the contract says 10 gallons of oil and you know exactly what it is. That's true. But if the extent of the contract is ambiguous, the court will look to the parties' conduct to give meaning to the contract. And that's what I'm arguing the arbitrator did in this case. And you do agree that the pleading has to be construed liberally in favor of the pleader? I do agree it has to be construed liberally. But when you look at the entire course of conduct here, which is what the arbitrator did, he looked not just hyper-technically at the language of the use of the word appeal or grievance. That wasn't really the basis for the arbitrator's decision. What was the course of conduct other than Ms. Johnson, who expressed a preference, clear preference, to go down the arbitration alley as opposed to going to the MSPB? The ADR, the Alternative Dispute Resolution Alley. That was her clearly expressed preference. She said, I want ADR. Well, there's an ADR process at the MSPB, and there's an ADR process in the arbitration world. And she's addressing this in the arbitration. She's through her dart, if you will, at two targets, MSPB at one target, arbitration at another target. She clearly threw her dart at the arbitration target. Well, the arbitration, the ADR process, part of the arbitration process, I would say. Nothing else is very clear. The only thing that comes out loud and clear from all the correspondence. What was it that she was trying to ADR? Was it a grievance? She was trying to have Alternative Dispute Resolution over her removal. Right, and she felt her removal was improper. Yes, and she wanted to use ADR. That is by definition in the law a grievance. Not necessarily, because, again, there were four different options she had for pursuing that. She could have filed a grievance, or she could have gone to the Merit Systems Protection Board. Could the letter have been both? Excuse me? Could the letter have been both? Could the letter have been both? Yes, if the informal request procedure had been accepted, she may have opted to do that. But could it at the same time have been a formal request for a Step 1 grievance? It could have been. Why isn't it? That's why it's so important to look at her subsequent conduct and the union's subsequent conduct. If they really believed that that letter was both a grievance and a request for ADR, then they would never have waited until over a year later, May 11, 2009, to go to Step 2 grievance over her removal. But it seems to me if it's both, then that would explain why, at least for a period of time, she is seeking the informal procedure. And when it's very clear that there's no mutuality, the agency's not going to give her that process, then why can't she opt for the other part of her appeal? Because the time has been running this entire time. The contractual limits for grievances only stops if both parties mutually enter into ADR, which did not happen. So meanwhile, the time for filing a Step 2 grievance was running during that entire time. But if this letter counts for both, then wouldn't her request for formal Step 1 grievance have dated back to that May 20th letter? If it was intended to be a Step 1 grievance, that May 20th letter. And again, why do you dismiss that it's not both? I'm saying if it was both, the reason why I say it's not both, because if it was, then the time would have been running for the agency to respond to her Step 1 grievance and for her to pursue a Step 2 grievance. Nothing would have frozen in time until ADR was actually entered into mutually by both parties. That wasn't happening. And after that didn't happen, 14 days after she submitted her, if we consider the May 20th letter, a Step 1 grievance, then she would have elevated it to a Step 2, knowing that nothing had frozen at that point. But she didn't. She continued to pursue ADR. There's something that's off kilter in your theory of this case. This is an employee who got fired, right? This is an employee who got fired. And so your theory is that this rational person who got fired is willing to roll her dice on an informal process that the agency can refuse to give her, and that she doesn't give anything, doesn't care about anything else. No, actually, Your Honor. There's no showing that she tried to go to the MSPB. She's saying, well, you know, I'm going to roll the dice, and I got fired, but if the government doesn't even want to do ADR, I'm fired. Goodbye. I don't care about grieving. I mean, that doesn't make any sense. With all due respect, that's not my theory of the case. Yes, it is. My theory of the case is that someone dropped the ball. That's that the union was so obsessed, if you want to say, with trying to get the agency to engage in ADR, trying to force this. You're saying the union, but we're talking about what she was trying to do, not the fact that when you have the rules that favors liberal pleadings for your pro se person, the fact that the union may have dropped the ball shouldn't be taxed to her. Well, the union was her representative, and she relied on that. That's my theory of the case. Not that she didn't care, but that she relied on her union. Her union became obsessed with pursuing this ADR route, and as a result, time limits for grieving fell by the wayside. The document, she was unrepresented when she filed this piece of paper. So our question is, what was she trying to get in filing this piece of paper? And on your theory of the case, she, although she'd been fired, and although she was real upset about being fired and disagreed with it, she was willing to go up or down on whether the union, pardon me, whether the agency would even entertain ADR. That just doesn't make any sense. Well, it makes sense. Someone throws their job away and says, hey, you know, I know if you don't give me ADR, I'm fired. Hello, thank you. I'm happy to be fired. That's not the way it works. Well, again, the arbitrator had to go through the same exercise of trying to figure out what she meant. And to that extent, that is a factual inquiry. And the arbitrator didn't see it that way. The arbitrator said, I'm looking at everything that happened in this case. I'm looking at the fact that the union didn't file a Step 2 grievance until May of 2009, way over a year after what they're saying now was a Step 1 grievance. And that doesn't make sense to me. The arbitrator was saying, it looks to me like what they're doing is retroactively looking back and saying, uh-oh, we better call this a Step 1 grievance, even though so much time has passed. Could you look at JA 37 in the record, please, Ms. Stern? This is the transmission verification report from an outfit called Image Mart, which is out in Ohio someplace. And it's being faxed to a fax telephone, 410-605-7782. Is that the fax address of the Department of Veterans Affairs? I apologize, but I don't know that that information is in the record, and I don't know the answer to that question. You don't know the answer to that question, even though you were invited to answer that question by footnote 3 in the reply brief. Well, I can't go outside the record, Your Honor, and again, I'm not sure if that information is in the record. The only thing that's in the record- I gather you're no longer relying on the one-day difference and the dispute as to when that was received. Is that right? We're assuming it was timely? That's right, because the arbitrator found, as a matter of fact, that the agency didn't receive it until May 23rd, but didn't engage in the further legal analysis that would be required to determine whether- Are you wanting that point? Yes. Okay, thank you. Again, for the reasons that the arbitrator had to construe the party's intent, that that really was at the heart of this case, is to construe what the parties intended, and particularly Ms. Johnson and the union, how they considered this May 20th letter at the time that it was filed, based on all their subsequent conduct. The arbitrator clearly found that this was never intended to be a step one grievance. The agency consistently acted as if they didn't believe it was a step one grievance, and that finding is supported by substantial evidence. Did the agency provide evidence of any sort to explain why they never responded to that first letter? When they answered, when Ms. Johnson's union finally said, this is a step two grievance of the removal based on what we're now saying is a May 20th step one grievance, the agency replied, basically, what are you talking about? We never understood that to be a step one grievance. No, it says- That's why they never responded. Because it says it's an appeal. Because it looked like it was requesting ADR, and that's why they didn't respond. If Ms. Johnson and the union thought that was a step one grievance, they would have demanded a response far before May of 2009. Yeah. Thank you, Your Honors. Thank you, Ms. Stern. Mr. Keats, you have a little over four minutes remaining. Thank you. First of all, the arbitrator didn't say lack of jurisdiction because the union delayed too long in referring the case to the second step. The arbitrator, that's not part of his rationale at all. Secondly, to extent there's factual issues here, the arbitrator didn't hold a hearing, which would be one way of resolving questions of intent if there really were ambiguity. Thirdly, if the issue is on its face was the May 20th letter an appeal or a grievance or a complaint, then that answer is not affected by if the union dropped the ball later. Unfortunately, the union does that all the time. Somebody files a timely grievance, and where there's a grievance procedure that has a limit on moving it to the second step, it fails to. The arbitrator may find lack of jurisdiction because it wasn't moved to the second step on time. That doesn't have any implication whatsoever as to the nature of the original filing. If there's ambiguity, the arbitrator did not attempt to resolve it. This is not a matter of the arbitrator saying the May 20th document is ambiguous as to whether the words, I am appealing the recently received removal from you, whether that's an appeal or not. He doesn't discuss it. He ignores it. There's no inconsistency whatsoever with pursuing litigation and pursuing ADR. The contract explicitly says ADR can be used before or during the grievance procedure. The arbitrator at footnote says, gee, the MSPB says you can only have ADR before filing a complaint. Actually, that's not what that rule says. If you go to the MSPB, you can get a 30-day extension if you and the agency enter into an ADR agreement. That delays the original 30-day deadline by 30 days. Of course, MSPB has ADR during the process. They offer it, just as this court does. It's the same thing. If I file a petition for review in this court and say I am appealing the arbitrator's decision and I want ADR, there's no ambiguity there as to whether I'm filing an appeal. Well, how much do you think the arbitrator was driven in the ultimate decision by his misunderstanding about at what point in time you have to do ADR? I cannot fathom the arbitrator's decision. He refers to that. It's a data point, no doubt, in the arbitrator's decision. It's difficult to deal with cases where there's no hearing, there's no oral argument. He certainly seems to find it significant that her first sentence has two coordinate clauses joined by a hand and the arbitrator underlines the second clause and says, this request for ADR was impossible of achieving because of something. And that's it. He doesn't even say it. And therefore, the first clause... What record was presented by Ms. Lewis on behalf of the representative and then Ms. Mack? I mean, were there briefs? Arbitrator's got to work on something, right? Yeah. And there's no testimony, just pieces of paper? Most of the appendix begins on 11 through 41 is the union's brief and attachments and 42 and following is the agency's brief and attachments. Almost all the attachments are identical. But that's all he had. And there's nothing strange about an arbitrator saying, send me your arguments. What is strange is making factual findings.